**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00359-RGJ-CHL**

EMILY G.,[1]                                                                                       **Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY,**                                          **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff Emily G. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 13.) Claimant and the Commissioner each filed a Fact and Law Summary. (DNs 12, 16.) Claimant did not file a reply, and her time to do so has expired. Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

**I.     FINDINGS OF FACT**

On or about July 22, 2021, Claimant filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on October 1, 2020. (R. at 13, 66-68, 76, 84-85, 95-96, 211-22.) On September 28, 2022, Administrative Law Judge ("ALJ") Susan Brock ("the ALJ") conducted a hearing on Claimant's applications. (*Id.* at 38-65.) In a decision dated December 23, 2022, the ALJ engaged in the five-step sequential

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 10-37.) In doing so, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025. (*Id.* at 16.)

2. The claimant has not engaged in substantial gainful activity since October 1, 2020, the alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: anxiety disorder; borderline personality disorder versus histrionic personality disorder; major depressive disorder; post-traumatic stress disorder (PTSD); and persistent headaches. (*Id.*)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 17.)

5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently stoop; can tolerate frequent exposure to vibration; occasional exposure to fumes, odors, dusts, gases, and pulmonary irritants and occasional exposure to unprotected heights and hazardous machinery. The individual can understand, remember, and carry out simple instructions; can sustain concentration and pace in two-hour segments to complete repetitive tasks requiring little independent judgment; can occasionally interact with coworkers, supervisors, and general public; and can tolerate occasional workplace changes gradually introduced. (*Id.* at 19.)

6. The claimant is unable to perform any past relevant work. (*Id.* at 29.)

7. The claimant . . . was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (*Id.* at 30.)

8. The claimant has at least a high school education. (*Id.*)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.*)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*)

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2020, through the date of this decision. (*Id.* at 31.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on June 15, 2023. (*Id.* at 1-7, 199-210.) In particular, the Appeals Council noted the Claimant had submitted additional evidence in the form of two treating source statements: one from Sameet S. Sohi, M.D., dated February 22, 2023, and one from Kristin Huckleberry Koetter, APRN, dated January 25, 2023. (*Id.* at 2.) The Appeals Council found that the additional evidence did not relate to the relevant period at issue because the ALJ decided Claimant's case through December 23, 2022. (*Id.*) Because the Appeals Council denied Claimant's request for review, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2023); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on July 12, 2023. (DN 1.)

## II.    CONCLUSIONS OF LAW

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2023).

A. **Standard of Review**

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

B. **Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2023). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2023).

4

        significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

    **C.**    **Claimant's Contentions**

Claimant made two arguments. First, she argued that the Appeal's Council's failure to consider the supplemental treating source statements she provided warranted a sentence six remand. (DN 12, at PageID # 1606; DN 12-1, at PageID # 1608-09.) Second, she argued that the ALJ's step three analysis did not comport with SSR 19-4p. (DN 12, at PageID # 1606; DN 12-1, at PageID # 1609-11.) The undersigned will consider each of these arguments below.

5

> **1.      Sentence Six Remand**

Claimant argued that the Appeals Council's failure to consider the supplemental treating source statements she tendered was an error warranting remand. (DN 12, at PageID # 1606; DN 12-1, at PageID # 1608-09.) The Commissioner contended that only the ALJ's decision is subject to judicial review by this Court, not the Appeals Council's decision to deny review. (DN 16, at PageID # 1625.)

As a starting point, the undersigned agrees that in this case, it is the decision of the ALJ, not the decision of the Appeals Council, that is subject to judicial review. While the Supreme Court has held that an Appeals Council decision to dismiss a claimant's appeal as untimely is a final decision that is reviewable pursuant to 42 U.S.C. § 405(g), *Smith v. Berryhill*, 587 U.S. 471, 474 (2019), in this case, the Appeals Council merely declined to review the decision of the ALJ. The Social Security Act provides, "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . ." 42 U.S.C. § 405(g). "But the [Social Security] Act does not define 'final decision,' instead leaving it to the [Social Security Administration] to give meaning to that term through regulations." *Sims v. Apfel*, 530 U.S. 103, 106 (2000) (citing 42 U.S.C. § 405(a) and *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)). The applicable regulations provide that where the Appeals Council denies review, the ALJ's decision becomes the final decision of the Commissioner. 20 C.F.R. § 422.210(a); 20 C.F.R. §§ 404.900(a)(4)-(5), 416.1400(a)(4)-(5), 404.955, 416.1455, 404.981, 416.1481 (2023); *see also Sims*, 530 U.S. at 106 ("SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision. But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision.").

Indeed, 20 C.F.R. § 422.210(a) expressly provides that "[a] claimant may obtain judicial review of a decision by an administrative law judge if the Appeals Council has denied the claimant's request for review, or of a decision by the Appeals Council *when that is the final decision of the [Commissioner]*." 20 C.F.R. § 422.210(a) (emphasis added). As noted above, the scope of the Court's review under the applicable statutory authority is expressly limited to whether the final decision of the Commissioner is supported by substantial evidence and whether the correct legal standards were applied in that decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); 42 U.S.C. § 405(h) ("No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."); *Key*, 109 F.3d at 273; *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993) (citing 42 U.S.C. § 405(g)) ("We review the final decision of the [Commissioner] to determine whether it is supported by substantial evidence."). Thus, the Appeals Council's denial of review of the ALJ's decision is a non-final decision of the agency that is not subject to judicial review. *See Pierson v. Comm'r of Soc. Sec.,* No. 21-2848, 2022 WL 819735, at *1 (6th Cir. Mar. 18, 2022) ("When the Appeals Council of the Social Security Administration declines to review a disability determination made by an administrative law judge (ALJ), it has not made a final decision subject to judicial review under 42 U.S.C. § 405(g). It has instead rendered the decision of the ALJ final and reviewable."); *Meeks v. Sec'y of Health & Hum. Servs.*, 996 F.2d 1215, 1993 WL 216530, at *1 (6th Cir. June 18, 1993) (citing 20 C.F.R. § 404.955) (unpublished) ("An Appeals Council order denying review is not, however, a reviewable order; such an order serves only to make the decision of the ALJ the final reviewable decision of the [Commissioner]."); *Matthews v. Apfel,* 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to

review the Appeals Council decision to deny review."); *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) ("When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner.").

Claimant's brief appears to inherently admit as much. Though her argument was phrased as a challenge to the propriety of the Appeals Council's action, she conceded that the remedy for the "error" she identifies is a sentence six remand. (DN 12-1, at PageID # 1608 (citing *Cooper v. Comm'r of Soc. Sec.*, 277 F. Supp.2d 748, 753 (E.D. Mich. 2003).) And the Sixth Circuit has held that is the case. *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citing *Wilkins v. Sec'y Dep't of Health & Hum. Servs.,* 953 F.2d 93, 96 (4th Cir. 1991) (en banc); *Phelps v. Sec'y of Health and Hum. Servs.,* 961 F.2d 1578 (6th Cir. 1992); and 20 C.F.R. § 404.955) ("When the appeals council denies review, the decision of the ALJ becomes the final decision of the Secretary. While new material evidence may be submitted for consideration to the appeals council pursuant to 20 C.F.R. § 404.970, on appeal we still review the ALJ's decision, not the denial of review by the appeals council." (citations omitted)). Accordingly, the undersigned will address whether the two treating source statements Claimant tendered to the Appeals Council entitle her to a sentence six remand.

A remand under 42 U.S.C. § 405(g) "sentence six" for consideration of additional evidence is warranted only if (1) the evidence is "new" and "material" and (2) "good cause" is shown for the failure to present the evidence to the ALJ. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (citing *Foster*, 279 F.3d at 357). As to

8

the first requirement, evidence is only "new" for purposes of 42 U.S.C. § 405(g) if it was not in existence or available to the claimant at the time of the administrative proceeding. *Foster*, 279 F.3d at 357. Such evidence is deemed "material" if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). However, evidence is not considered material if it merely depicts an aggravation or deterioration in an existing condition. *Sizemore*, 865 F.2d at 712. As to the second requirement, a claimant shows "good cause" "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Hum. Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)).

With this standard in mind, the undersigned finds that Claimant is not entitled to a sentence-six remand. As to the newness of the evidence, the statements are dated January 25, 2023, and February 22, 2023, which are both after the ALJ's hearing and decision in this case. (*Compare* R. at 8-9, *with id.* at 10-65.) However, the content of the statements references treatment provided before the date of the ALJ's hearing and decision so it is unclear why Claimant could not have provided these statements in advance of the hearing. Even if the undersigned considered the statements to be new, the undersigned finds that they are not material. Both statements reference symptoms and conditions explicitly considered by the ALJ in her decision including Claimant's post-covid symptoms, headaches, and other neurological symptoms, and thus, there is not a reasonable probability that the ALJ would have reached a different decision if these statements had been considered. Particularly in the case of Dr. Sohi's statement, the February 22, 2023, statement is largely duplicative of the February 12, 2021, statement from Dr. Sohi that the ALJ considered and found unpersuasive. (*Id.* at 8, 28, 422.) Finally, Claimant has not even attempted

9

to show "good cause" for not presenting the evidence to the ALJ, and the undersigned finds it unlikely that she could do so given that the opinions appear to have been prepared solely to support her disability claim. Courts have found this insufficient to demonstrate good cause. *See, e.g.*, *Koulizos v. Sec'y of Health & Hum. Servs.*, No. 85-1654, 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986) (citing *Wilson v. Sec'y of Health & Hum. Servs.*, 733 F.2d 1181 (6th Cir. 1984) and *Willis*, 727 F.2d at 551) ("[G]ood cause is shown for remand if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.").

For all these reasons, the undersigned finds that Claimant is not entitled to a sentence six remand.

### 2. SSR 19-4p

Claimant also argued that the ALJ's step three analysis was deficient because she did not explicitly analyze Claimant's headaches in accordance with SSR 19-4p and instead simply evaluated whether Claimant met Listing 11.02. (DN 12, at PageID # 1606; DN 12-1, at PageID # 1609-11.) At step three of the five-step evaluation process, the ALJ considers whether the claimant has an impairment that meets or equals the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, which are generally referred to as the "Listings." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). A claimant's impairment "meets" a Listing only when the claimant manifests the specific requirements described in the Listing's medical criteria; in other words, a claimant must point to specific findings that duplicate the enumerated criteria of the listed impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d) (2023); *see also Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006); *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific

10

medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency."). However, a claimant can also be considered disabled if his or her impairment is the "medical equivalent" of a Listing, meaning that the claimant's impairment is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a) (2023). The relevant regulation specifies that "medical equivalence" can be found in three ways: (1) a claimant has a listed impairment, does not exhibit all of the findings or the requisite level of severity in the relevant findings, but the other impairment-related findings are "at least of equal medical significance to the required criteria"; (2) a claimant has a non-listed impairment that is of "at least equal medical significance" to a listed impairment; or (3) the claimant has multiple impairments that in totality are of "at least of equal medical significance" to a listed impairment. *Id.* at §§ 404.1526(b), 416.926(b). If a claimant demonstrates that his or her impairment "meets" or "medically equals" a Listing, he or she is deemed conclusively disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

      Here, at step three, the ALJ explained,

> With respect to the claimant's physical impairments, the claimant does not have the gravity of symptoms nor medical documentation in order to establish an impairment of listing level severity. No treating or examining physician specifically opined the claimant's physical impairments, singularly or cumulatively, rise to the level of documented severity contemplated by any relevant physical listing.
>
> The undersigned has considered the claimant's migraines in accordance with SSR 19-4p, concerning primary headache disorders. Primary headache disorder is not a listed impairment in the Listings of Impairments. However, a primary headache disorder may, alone or in combination with another impairment, medically equal another listing. The mostly closely analogous listed impairment is epilepsy under 11.02. The claimant's headache disorder does not meet 11.02B because her condition does not cause dyscognitive seizures occurring at least once a week for three consecutive months during the relevant period. The claimant's condition does not meet 11.02D because the evidence does not show dyscognitive seizures occurring at least once every two weeks for three consecutive months.

11

(R. at. 17.) Claimant argued that this was insufficient to comport with SSR 19-4p because the ALJ did not consider and analyze the factors set forth therein. (DN 12, at PageID # 1606; DN 12-1, at PageID # 1609-11.) SSR 19-4p addresses how headache disorder impairments will be considered in DIB and SSI claims. SSR 19-4p, 84 Fed. Reg. 44667 (Aug. 26, 2019). In particular, SSR 19-4p provides that while headache disorder is not a listed impairment, it can be the medical equivalent of one. *Id.* at 44670-71. It notes that Listing 11.02 for epilepsy "is the most closely analogous listed impairment for a[ ] [medically determinable impairment] of a primary headache disorder." *Id.* at 44671. While there are four ways to demonstrate epilepsy under Listing 11.02,[3] SSR 19-4p explains how to consider medical equivalence to two of the four ways to meet the Listing for epilepsy, both of which relate to dyscognitive seizures:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to

---

[3] Listing 11.02 provides that a claimant can meet the Listing for epilepsy if the claimant demonstrates that despite adherence to prescribed treatment, the claimant has (A) generalized tonic-clonic seizures at least once a month for three consecutive months; (B) dyscognitive seizures at least once a week for three consecutive months; (C) generalized tonic-clonic seizures at least once every two months for four months and a marked limitation in one of five specified areas of functioning; or (D) dyscognitive seizures occurring once every two weeks for three consecutive months and a marked limitation in one of five specified areas of functioning. Listing 11.02, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (effective Apr. 2, 2021, through Oct. 5, 2023). The five areas of functioning are physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.*

> prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

*Id.* Claimant contended that the ALJ erred in not considering "the detailed factors outlined in" these paragraphs of SSR 19-4p. (DN 12-1, at PageID # 1611.) But Claimant cited no authority requiring the ALJ to provide such a detailed discussion.

While an ALJ is not required to address every Listing in his or her findings, if "the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Sheeks v. Comm'r Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). A "substantial question" requires the claimant to "point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 579 F. App'x at 432. But the regulations do not specify how much discussion an ALJ must provide regarding those Listings as to which a substantial question is raised. The Sixth Circuit has held that in evaluating whether a claimant has met or equaled a particular Listing, an ALJ must "actually evaluate the evidence, compare it to . . . the [relevant] Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). But the undersigned does not construe this as a heightened articulation requirement because, as the Sixth Circuit has also held, the applicable regulations only require the ALJ to *consider* whether the Listings are applicable; they do not require the ALJ to provide "good reasons" as in the context of the former treating physician rule. *Forrest v. Comm'r of Soc. Sec.*,

13

591 F. App'x 359, 365 (6th Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(3), (a)(4)(iii) and *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), *as amended*); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). Nor do the applicable regulations regarding the Listings require an ALJ to explain how he or she considered particular factors as they do in the context of the rules applicable to opinion evidence. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2023) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."). While some unpublished Sixth Circuit cases have found that a court may properly look to the ALJ's analysis elsewhere in the decision to assess what the ALJ considered at step three, others discourage speculating as to the ALJ's analysis. *Compare Bledsoe*, 165 F. App'x at 411 ("The mere failure to discuss every single impairment under the step three analysis is not a procedural error."), *and Forrest*, 591 F. App'x at 366 ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three."), *and Smith-Johnson*, 579 F. App'x at 435 ("It also is proper to consider the ALJ's evaluation . . . at other steps of his decision . . . ."), *and Neace v. Comm'r of Soc. Sec.*, No. 22-5090, 2022 WL 20742559, at *4 (6th Cir. Sept. 14, 2022) (noting that "[t]he ALJ did not explain their [step three] reasoning elsewhere in the decision"), *with Harvey v. Comm'r of Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *6 (6th Cir. Mar. 6, 2017) (noting that while the district court looked elsewhere in the ALJ's opinion to see what medical evidence the ALJ had cited, "[t]he district court should not have speculated what the ALJ may have concluded had he considered the medical evidence under the criteria in Listing 1.02"). These cases notwithstanding, SSR 17-2p specifically addresses "articulation requirements" for an ALJ's discussion of medical equivalence. SSR 17-2p, 82 Fed. Reg. 15263 (Mar. 27, 2017). As to cases where no medical equivalence is found, the SSR provides,

> Similarly, an adjudicator at the hearings or AC level must consider all evidence in making a finding that an individual's impairment(s) does not medically equal a listing. If an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

*Id.* at 15265.

Here, the ALJ's step three findings contained a specific statement that Claimant's impairments did not meet or medically equal a Listing as well as a specific citation to SSR 19-4p noting that the ALJ "considered the [C]laimant's migraines in accordance with" it. (R. at 17.) The ALJ then went on in her discussion of Claimant's RFC to provide a detailed summary of Claimant's medical treatment for her various impairments including her headaches. (*Id.* at 19-29.) The ALJ noted the Claimant reported having headaches after her COVID diagnosis but found generally that Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence and other evidence in the record. (*Id.* at 20-21.) The ALJ noted that Claimant reported a headache when admitted to the hospital on November 19, 2020, but that on exam she had no focal neurologic deficits and a CT of her brain at that time showed no acute intracranial abnormality. (*Id.* at 21-22 (citing 676-87, 809).) The ALJ recounted that in March 2021, Claimant told a provider that she was having headaches that were different from migraines and were like pain around her eyes though she was unsure how often she was experiencing them. (*Id.* at 22-23.) The ALJ noted multiple instances where Claimant reported that her headaches improved with medication. (*Id.* at 23-26.) The ALJ noted

15

that an MRI of Claimant's brain on August 30, 2021, was unremarkable and showed no acute intracranial findings. (*Id.* at 24.) In April 2021, the ALJ emphasized that Claimant told a provider that she had stopped taking one medication that had been effective in controlling her headaches due to "bothersome side effects." (*Id.* at 24.) The ALJ noted that Claimant also underwent Botox therapy that decreased the frequency of her headaches. (*Id.* at 26-27.) In discussing the opinion of Claimant's ENT doctor, Dr. Sameet Sohi, the ALJ found the opinion unpersuasive because Dr. Sohi relied too heavily on the Claimant's "own subjective reports of fatigue, headache, and shortness of breath." (*Id.* at 28.) The ALJ specifically stated, "The medical evidence during most of 2021 and 2022 shows the claimant's symptoms were largely under control with proper treatment and medications." (*Id.* at 28.) The undersigned finds that his discussion supports that ALJ's conclusion at step three that Claimant's impairments did not meet or medically equal a Listing, including Listing 11.02.

On balance, the undersigned finds that the ALJ's decision did not violate either SSR 19-4p or SSR 17-2p because Claimant has not demonstrated a substantial question as to whether her headaches are medically equivalent to Listing 11.02. Claimant's brief did not cite a single medical record that spoke to any of the factors outlined in SSR 19-4p that she criticized the ALJ for not addressing. Perhaps she did not do so because during the hearing before the ALJ her counsel— the same one who signed her brief before this Court—stated in his opening statement, "So, we don't really have any listed type of impairment or anything like that. This is obviously more of a 96-8p 85-15 combination type of analysis."[4] (R. at 44.) But her counsel's statement notwithstanding, Claimant simply has not pointed to specific evidence demonstrating that her

---

[4] SSR 96-8p addresses the determination of a claimant's RFC and SSR 85-15 addresses the application of the Medical-Vocational Guidelines; neither has anything to do with an ALJ's step three analysis. *See* SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996); SSR 85-15, 1985 WL 56857, at *1 (Jan. 1, 1985).

headaches are medically equivalent to either Listing 11.02B or D. In the absence of such proof, the undersigned finds that the ALJ did not err in providing further discussion at either step three or later in his decision. *Cf. Mills v. O'Malley*, No. 6:23-CV-156-HAI, 2024 WL 150292, at *4-7 (E.D. Ky. Jan. 12, 2024) (concluding claimant had raised a substantial question as to whether his headaches were medically equivalent to Listing 11.02 and that ALJ's discussion did not comport with SSR 17-2p).

### III.   RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:   Counsel of Record
July 25, 2024

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all Parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).